UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


UNITED STATES OF AMERICA                    CRIMINAL ACTION


VERSUS                                      NO: 08-0164


BARBARA SIMMONS DOWL                        SECTION: "R"


## Order and Reasons

Before the Court is defendant Barbara Dowl's Motion to Dismiss Count One of the Indictment and Motion to Review Magistrate's Order. For the following reasons, the Court DENIES both motions.


**I.   BACKGROUND**

In 1991, defendant Barbara Dowl and her former husband purchased a home at 8633 Zimple Street in New Orleans. The Dowls failed to keep up with their property taxes, and the property was adjudicated to the City of New Orleans in 1997. The City did not take possession of the home at the time, and it is disputed

whether, and for how long, the Dowls continued to live there.  In 2004, the City sold the property to Robinson Ventures LLC pursuant to a provision of law permitting the sale of abandoned property.  The Dowls filed a civil suit in state court several weeks later, seeking to annul the sale of the property.  The City of New Orleans and Robinson Ventures were named as defendants. That suit is still pending and is the subject of the Motion to Review Magistrate's Order.

The Zimple Street property was damaged by Hurricane Katrina in August of 2005.  According to the indictment, Dowl engaged in a scheme to obtain government loans and grants for storm-related damage to the property.  On October 31, 2005, Dowl applied to the Small Business Administration ("SBA") for a disaster-related loan.  She claimed to own the Zimple Street property and agreed to assign any disaster compensation from "other sources" to the SBA.  The loan was approved in March of 2006, and the SBA began to send Dowl the loan disbursements.

At some point later that year, Dowl allegedly executed a false quit-claim deed, stating that the City of New Orleans had sold the Zimple Street property to her in April of 2006, and recorded the deed in the City of New Orleans property records. On November 3, 2006, Dowl applied to the Louisiana Road Home Program for U.S. Department of Housing and Urban Development

2

Block Grant Funds ("Road Home Funds").  In her application, she claimed to be the owner of the Zimple Street property, and attached the quit-claim deed as proof of her ownership.  She also disclosed that she had applied for the SBA loan.  On April 18, 2008, the Road Home Program awarded Dowl $132,000 to repair the Zimple Street property.

On May 9, 2007, Dowl received a check in the amount of $85,930 from Road Home.  The following week, Road Home, through its agent, wired the remaining $46,000 of the grant to the SBA. The SBA sent Dowl a letter in June of 2007 informing her that it had received the $46,000, that it was prohibited from providing loan funds that duplicate funding from other sources for the same loss, and that it would therefore deduct the $46,000 from the principal of her loan.

In the meanwhile, the City of New Orleans had filed an exception for no cause of action in the state annulment action. The City argued that LA. REV. STAT. 47:2110(A)(1), which prohibits the Louisiana courts from impeding "the collection of an ad valorem tax," barred the court from issuing any decision that would annul the tax sale.  The Dowls' only remedy, the City argued, was to file a suit to recover the proceeds.  In a brief order dated January 26, 2007, the court granted the exception and dismissed the City as a defendant, with prejudice.  The Dowls

3

filed a notice of appeal on February 27, 2007, but it does not appear from the record that they ever perfected the appeal. Robinson Ventures did not file a similar exception and remains a defendant in the case.  No further activity took place in the case between February 27, 2007, and July 28, 2008.

On June 13, 2008, the grand jury issued an indictment charging Dowl with one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of theft of government funds, in violation of 18 U.S.C. § 641.  The wire fraud charge corresponds to the $46,000 that Road Home transferred to the SBA.  The theft charge corresponds to the $85,930 that Dowl directly received from Road Home.

After the issuance of the indictment, Dowl retained a private criminal defense attorney. On July 28, 2008, Dowl's criminal counsel filed a motion to enroll as counsel for Dowl in the state lawsuit.  The same day, the attorney noticed the depositions of Brad Robinson and Michelle Robinson in the state actione.  The record does not reveal the Robinsons' relationship to the Zimple Street property, but the government asserts that they are "important government witnesses in the prosecution of this case."

On August 5, 2008, Dowl filed a motion to dismiss Count One of the indictment.  She argues that the wire fraud charge is

4

legally deficient because: (1) it is multiplicitous; (2) the wire transfer from Road Home to SBA occurred after the fruition of her allegedly fraudulent scheme, and (3) the wire transfer was required by law and regulation.

Several days later, the government filed a motion for a protective order, seeking to enjoin Dowl and her attorney from taking the Robinsons' deposition in the state lawsuit.  This Court referred the motion to the magistrate judge, who granted the motion.  Dowl has now filed a motion asking this Court to review the magistrate's order.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss

Under Fed. R. Crim. P. 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."  In the Fifth Circuit, "[t]he propriety of granting a motion to dismiss an indictment under [Rule] 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *United States v. Flores,* 404 F.3d 320, 324 (5th Cir. 2005).  "If a question of law is involved, then consideration of the motion is generally proper."  *Id.*

**B.   Motion to Review Magistrate's Order**

The standard under which a district court reviews the decision of a magistrate judge varies depending upon the type of decision rendered.  For orders relating to "nondispositive" matters, a district court "must consider any timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law."  FED. R. CRIM. P. 59(a).  For recommendations relating to "dispositive" matters, the district court must review the magistrate's decision *de novo*.  FED. R. CRIM. P. 59(b).  Whereas discovery-related motions typically fall within the first category, *see FDIC v. LeGrand*, 43 F.3d 163, 167 (5th Cir. 1995), motions for injunctive relief fall within the second category, *see* 28 U.S.C. § 636(b)(1)(A) (prohibiting magistrate judges from making a final determination on "a motion for injunctive relief").

Though the order sought here could be characterized as either a discovery order or an injunction, the Court finds that it is best treated as an injunction.  If upheld, the order will stay some or all of the proceedings in pending state litigation. The Court will therefore treat the magistrate's order as a Report and Recommendation and will review it *de novo*.

6

## III. DISCUSSION

### A.   Motion to Dismiss

Dowl attacks the legal sufficiency of Count One of the indictment on a number of grounds.  First, she argues that Counts One and Two are multiplicitous.  Second, she argues that the $46,000 that is the subject of Count One was not transferred in furtherance of her scheme.  Finally, she argues that the transfer of the $46,000 was required by law and therefore not illegal.

### i.   Multiplicity

Dowl first argues that Counts One and Two are multiplicitous, that is, that they both charge the same offense. A single offense may not be charged in more than one count of an indictment.  *United States v. Plank*, 493 F.3d 501, 503 (5th Cir. 2007)(citing *United States v. Heath*, 970 F.2d 1397, 1401 (5th Cir. 1992)).  This rule against multiplicitous indictments preserves the defendant's Fifth Amendment right against double jeopardy by ensuring that he does not receive two sentences for the same offense.  *Id.*

Dowl urges the Court to find that the count for wire fraud and the count for theft of government funds are multiplicitous because both counts are based upon to a single scheme to defraud. This argument misstates the legal test.  The Supreme Court has

7

rejected the "same conduct" test for Double Jeopardy and instead applies a "same elements" or "*Blockburger*" test. *See United States v. Dixon*, 509 U.S. 688, 704 (1993) (rejecting "same conduct" test of *Grady v. Corbin*, 495 U.S. 508 (1990)).  To determine whether an act or transaction constitutes one offense or two, the court must ask "whether conviction under each statutory provision requires proof of an additional fact which the other does not."  *United States v. Buchanan*, 485 F.3d 274, (5th Cir. 2007) (quoting *United States v. Reedy*, 304 F.3d 358, 363 (5th Cir.2002)); *see also United States v. Lankford*, 196 F.3d 563, 577 (5th Cir. 1999)(quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).  "Determining whether statutory offenses are separate for double jeopardy purposes involves parsing the statutes apart from the facts of any particular case."  *United States v. Singleton*, 16 F.3d 1419, 1422 (5th Cir. 1994).

Here, Dowl has been charged with one count of wire fraud and one count of theft of government funds.  *See* 18 U.S.C. § 1343; 18 U.S.C. § 641.  The elements of wire fraud are "(1) the formation of a scheme or artifice to defraud, and (2) use of the wires in furtherance of the scheme."  *United States v. Brown*, 459 F.3d 509, 518 (5th Cir. 2006).  Theft of government funds does not require proof of the use of wires in furtherance of the scheme,

but it does require proof that the stolen funds are federal funds.  *See United States v. Barnes*, 761 F.2d 1026, 1033 (5th Cir. 1985).  Because each offense requires proof of an additional fact, the inclusion of both counts in the indictment does not violate the Double Jeopardy Clause.  *See Lankford*, 196 F.3d at 578 (finding no Double Jeopardy violation because "a kidnapping conviction requires proof of a fact not required by the interstate domestic violence statute . . . [and] a conviction for interstate domestic violence requires proof of a fact not required by the kidnapping statute").

Dowl supplements her legal challenge to the allegedly multiplicitous charges with a common sense argument.  Pointing to the government's own characterization of her actions, Dowl argues that there was "a single scheme here to acquire the $132,000 grant by falsely representing that Barbara was the owner and occupant" of the Zimple Street property.  (R. Doc. 14-2 at 6.) According to Dowl, it is unfair to charge her with two offenses for the same scheme merely because some portion of the money happened to be wired to the SBA.  The Court addresses the connection between the use of the wires and Dowl's scheme below. *See infra*.  Stripped of this element, Dowl's argument is essentially a criticism of the Supreme Court's Double Jeopardy jurisprudence.  Under the prevailing test, Dowl undoubtedly could

have been charged with both counts if the entire $132,000 had been wired directly to her account or directly to the SBA. *See, e.g.*, *United States v. Williams*, 527 F.3d 1235, 1240-43 (11th Cir. 2008) (rejecting Double Jeopardy challenge brought by defendant convicted of five counts of wire fraud and one count of theft of federal funds based on a single, ongoing scheme to defraud). Road Home's decision to distribute the two portions of the grant separately does not somehow immunize Dowl from the wire fraud charge. *Cf. id.* at 1242 ("[A] federal agency's *a priori* decision to disburse grant funds through periodic installments neither bars criminal liability nor constitutes an unfair conversion of one offense into multiple counts.").

###### ii.   Use of the Wires

Dowl next argues that the wire fraud count does not state an offense because the wire transfer from Road Home to the SBA does not meet the requirements of 18 U.S.C. § 1343. Like the mail fraud statute,[1] the wire fraud statute "requires only that the [use of the wires] caused by the defendant's actions be 'incident to an essential part of the scheme.'" *United States v. Ingles*,

---

[1] "The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses here." *Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987).

445 F.3d 830, 835 (5th Cir. 2006).  One "causes" the wires to be
used "[w]here one does an act with knowledge that the use of the
[wires] will follow in the ordinary course of business, or where
such use can reasonably be foreseen . . . ." *Id.* (quoting
*Pereira v. United States*, 347 U.S. 1, 8-9 (1954)).  In order to
establish that the use of the wires is "incident to an essential
part of the scheme," the government must prove that "completion
of the alleged scheme . . . depend[ed] in some way on the
information" that was transferred over the wires.  *Id.* (quoting
*United States v. Tencer*, 107 F.3d 1120, 1125 (5th Cir. 1997)).

Dowl does not argue that the use of the wires was
unforeseeable.  Rather, alluding to the "incident to an essential
part of the scheme" requirement, she argues that "the success of
[her] scheme in no way depended on the wire transfer" and that
the transfer "involved little more than post-fraud accounting."
(R. Doc. 14-2 at 7.)  As evidence of this, she contends that the
transfer "occurred after the fruition of [her] allegedly
fraudulent scheme."  (*Id.* at 6-7.)  *Cf. Kann v. United States*,
323 U.S. 88, 94 (1944) (holding that there was no violation of
the mail fraud statute because, inter alia, "[t]he scheme in each
case had reached fruition" before the mailing occurred).  She
adds that "[i]t was immaterial to [her] how the SBA got paid,
whether by mail, wire transfer, hand-delivery, or Pony Express."

(*Id.* at 7.)  *Cf. Kann*, 323 U.S. at 94 (noting that "[i]t was immaterial to the [defendants], or to any consummation of the scheme, how the bank which paid or credited the check would collect from the drawee bank").

In support of her position, Dowl cites several Supreme Court mail fraud cases.  (*See* R. Doc. 14-2 at 6.)  The defendants in those cases, however, obtained the benefit they sought *before* the use of the mail occurred.  *See United States v. Maze*, 414 U.S. 395 (1974) (invoices mailed after defendant fraudulently used credit card to obtain motel rooms); *Parr v. United States*, 363 U.S. 370 (1960) (invoices mailed to school district after defendants fraudulently used credit cards to obtain gasoline); *Kann*, 323 U.S. at 94 (checks mailed to drawee bank after defendants fraudulently cashed checks and obtained money).  By contrast, Dowl received a substantial benefit as the *result* of the wire transfer.  According to the indictment, Dowl's scheme was to obtain $132,000.  (*See* Indictment, R. Doc. 1 at ¶ 9.)  She received part of that sum directly and the remainder indirectly through the wire transfer and resulting loan reduction.  The completion of her scheme--that is, the acquisition of the full $132,000--therefore "depend[ed]" on the transfer from Road Home to SBA.  *Ingles*, 445 F.3d at 835.  Indeed, the entire scheme did not come to fruition until both the $46,000 and the $85,390 had

12

been transferred.  *Cf. Kann v. United States*, 323 U.S. 88, 94 (1944) (holding that there was no violation of the mail fraud statute because, inter alia, "[t]he scheme in each case had reached fruition" before the mailing occurred).  Because the completion of the scheme depended in part on the wire transfer, the Court finds that the transfer was "incident to an essential part of the scheme."  *Ingles*, 445 F.3d at 835.

### iii. Required by Law

Dowl's final attack on the legal sufficiency of the indictment involves the federal laws prohibiting the duplication of federal disaster assistance benefits for a single loss.  *See* 42 U.S.C. § 5155; Department of Defense Appropriations Act of 2006, Pub. L. 109-148, 119 Stat. 2680, 2781 (2005); Alternative Requirements for CDBG Disaster Recovery Grantees, 71 Fed. Reg. 7666, 7670 (Feb. 13, 2006).  According to Dowl, the wire transfer from Road Home to the SBA was mandated by law and would have occurred "regardless of the defendant's alleged fraudulent scheme."  (R. Doc. 14-2 at 7.)  Invoking *Parr v. United States*, she claims that a wire transfer mandated by law cannot form the basis for a wire fraud conviction.  *Cf. Parr*, 363 U.S. at 391 ("[W]e think it cannot be said that mailings made or caused to be made under the imperative command of duty imposed by state law

13

are criminal under the federal mail fraud statute . . . .").

The Fifth Circuit has recognized that *Parr* limits the applicability of the mail fraud statute--and by extension the wire fraud statute--"where the mailings are both not themselves false or fraudulent, and their mailing is required by law." *United States v. Krenning*, 93 F.3d 1257, 1263 (5th Cir. 1996); *see also United States v. Curry*, 681 F.2d 406, 412 (5th Cir. 1982).  Importantly, however, the *Parr* exception does not apply to every case involving a use of the mails or wires that is required by law.  The Fifth Circuit has held that *Parr* does not protect the defendant "where the legal requirement to make the mailings is triggered by the fraudulent scheme." *Krenning*, 93 F.3d at 1263.  In other words, the exception does not apply when the defendant's scheme is a but-for cause of the wire transfer. *See United States v. Caldwell*, 302 F.3d 399, 416 (5th Cir. 2002) (finding that the *Parr* exception was "inapplicable because [the] mailings would not have been made but for [the defendant's] alleged scheme to defraud"); *see also United States v. Schmuck*, 489 U.S. 712, 713 n.7 (1989) (distinguishing *Parr* on the basis that whereas the mailings in *Parr* "would have been made regardless of the defendants' scheme," the mailings at issue in *Schmuck* were "derivative of [the fraudulent scheme] and would not have occurred but for that scheme").

14

Here, the money transfer from Road Home to the SBA would not have occurred but for Dowl's fraudulent scheme.  The indictment alleges that Dowl submitted a false application to Road Home in order to obtain disaster assistance funds.  (*See* Indictment, R. Doc. 1 at ¶ 9.)  As a result of her fraudulent submission, Road Home awarded her $132,000 in grant money, part of which was sent directly to Dowl and part of which was wired to the SBA.  (*See id.*)  Had Dowl not engaged in a fraudulent scheme, Road Home would not have awarded Dowl any of the grant money, and the $46,000 transfer to the SBA would never have taken place.

In *Parr*, by contrast, the underlying mailings would have occurred, and would have taken the same form, even without the defendants' fraud.  The defendants in that case assumed control of a local school district, collected taxes through the mail, and then misappropriated some of the revenues.  *See Parr*, 363 U.S. at 374-76.  The Supreme Court reversed the defendants' conviction for mail fraud, finding that the tax-related mailings were insufficiently connected to the fraudulent scheme.  In particular, the Court found that the school district was required by law to collect taxes and that the taxes collected after the defendants took control were not "excessive, 'padded' or in any way illegal." *Parr*, 363 U.S. at 387.  Because the defendants' scheme had not affected the nature or form of the ordinary

mailings between the school district and the taxpayers, it was not mail fraud.

In this case, the link between the fraudulent acts, the use of the wires, and the fruits of the scheme is straightforward. Dowl submitted a fraudulent application to Road Home; Road Home wired a portion of its grant to the SBA; and the SBA reduced Dowl's loan by that amount.  Road Home does not disburse Block Grant funds except upon application.  It is therefore disingenuous to suggest that the transfer occurred solely by virtue of the legal requirement.  No money would have been transferred but for Dowl's allegedly fraudulent application.  For these reasons, the Court finds that the use of the wires underlying Count One of the indictment does not fall within the exception recognized in *Parr*.

For all of the foregoing reasons, Dowl's motion to dismiss is denied.

**B.   Motion to Review Magistrate's Order**

In addition to her motion to dismiss, Dowl has filed an objection to the protective order entered by the magistrate judge on August 22.  In that order, the magistrate found that Dowl had scheduled depositions in the state civil action "for the prime purpose of obtaining materials to which [Dowl] is not entitled in

16

[the] criminal action . . . ."  (R. Doc. 34 at 4.)  In particular, the magistrate held that several factors suggested that the depositions had been sought for the sole purpose of circumventing the strict discovery rules applicable to criminal cases:

> (1) the dormancy of the state civil action for eighteen months; (2) the appearance of Mr. Lemann [Dowl's criminal counsel] as counsel for Dowl in the state civil action only a few weeks after Dowl's arraignment; and (3) the issuance of deposition notices for Michelle and Brad Robinson [the government's witnesses in the criminal case] rather than for Robinson Ventures, LLC [the putative owner of the Zimple Street property].

(*Id.* at 4-5.)  Based on these findings, the magistrate ordered Dowl to "cease conducting or participating in further discovery" in the state case.  (*Id.* at 5.)

As noted, the Court will review this order *de novo*.  In assessing the motion, the Court must ask, first, whether it has the power to enjoin the state court proceedings.  Though the Anti-Injunction Act generally prevents federal courts from "grant[ing] an injunction to stay proceedings in a State court," 28 U.S.C. § 2283, it is well-established that Act's prohibition does not apply when the injunction is sought by the United States.  *See Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 225-26 (1957); *United States v. Lemaire*, 826 F.2d 387 388 n.2 (5th Cir. 1987) ("The [Anti-Injunction] Act does not prevent

the United States, or one of its agencies, from acting to protect a federal interest.").  Because the government has requested the present injunction, the Court finds that it has the power to enjoin Dowl from taking discovery in the state court proceedings.

"Of course, the fact that an injunction *may* issue under the Anti-Injunction Act does not mean that it *must* issue."  *Chick Kam Choo v. Exxon*, 486 U.S. 140, 151 (1988) (emphasis in original).  As other courts have noted, "[t]he power to enjoin state proceedings is discretionary, allowing the [district] court to weigh those factors both pro and con to the issuance of a stay."  *Commonwealth Edison v. Gulf Oil*, 541 F.2d 1263 (7th Cir. 1976); *see also* 17A WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL § 4222 (3d ed. 1998) ("[E]ven when the power exists to stay state court proceedings, the exercise of that power is discretionary, allowing the federal court to weigh all of the factors for and against issuing a stay.").

It goes without saying that the government has a compelling interest in protecting the integrity of the criminal justice system and may properly insist that the procedural rules be followed and enforced.  A problem arises when different rules applicable in two parallel actions provide litigants with an opportunity to circumvent the rules of criminal procedure.  As this case highlights, the rules governing discovery in criminal

prosecutions are "far more restrictive" than the analogous rules in federal and state civil proceedings.  *Campbell v. J.M. Eastland*, 307 F.2d 478, 518 (5th Cir. 1962).  In criminal prosecutions, the Jencks Act, 18 U.S.C. § 3500, "does away with pre-trial discovery of statements of a government witness" in criminal actions.  *Id.*  In a Louisiana civil suit, by contrast, parties may take the deposition of "any person" so long as the information sought is relevant to any claim or defense.  La. Code Civ. P. arts. 1422, 1437.  Parallel civil and criminal proceedings present the defendant with the opportunity to try to circumvent the restrictive criminal discovery rules by invoking the more liberal civil discovery rules.

Courts faced with this problem have focused on the need to prevent abuses of the discovery system.  In *Campbell v. J.M. Eastland*, Judge Wisdom wrote:

> [a] litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit.  Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and policies applicable to one suit from doing violence to the other.

*Campbell*, 307 F.2d at 487.  A number of other cases echo this concern.  *See, e.g.*, *Securities and Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980)

19

("The noncriminal proceeding, if not deferred, might . . . expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b) . . . ."); *In re Application of Eisenberg*, 654 F.2d 1107, 1113 (5th Cir. 1981) (approving *Campbell*'s holding that "liberal civil discovery procedures were not a 'back door' to information otherwise beyond reach under the criminal discovery rules"); *St. Paul Fire and Marine Ins. Co. v. United States*, 24 Cl. Ct. 513, 516 (1991) ("[T]he reason why courts attempt to avoid concurrent civil and criminal suits is that the broader discovery permissible in civil cases should not be used to compromise parallel criminal proceedings, particularly, in the instance where the parallel criminal investigation may be said to churn over the same evidentiary material.") (internal citations and quotation marks omitted).

It is clear from the record in this case that Dowl is attempting to circumvent the restrictive criminal discovery rules by taking discovery in the state court action.  As the magistrate observed, the timing of the depositions is suggestive of this. Before the issuance of the indictment, the state action appeared to be all but over.  The City of New Orleans had successfully petitioned the state court to dismiss the claims against it on the basis that a state statute prohibited the annulment of a tax sale.  Nothing else happened in the case for the following

20

seventeen months.  Then, a month after the federal indictment was
issued, Dowl's counsel in the criminal case enrolled as counsel
in the state case and sought to take the depositions of two
individuals who happened to be key government witnesses in the
criminal action.  Dowl has not explained why she seeks to depose
these two witnesses, and no others, at this particular time.  The
only explanation she offers for the unusual pattern of activity
is that "an 18-month period of inactivity in the Civil District
Court is not uncommon."  (R. Doc. 30-1 at 5.)  In light of the
circumstances of the case, and without a more convincing
explanation from Dowl, "[i]t is a fair inference from the record
that the [attempted discovery] was a tactical maneuver to enable
[Dowl] to gain advance information on the criminal case."
*Campbell*, 307 F.2d at 483.  The Court finds that the proposed
discovery threatens to prejudice the government's ability to
prosecute its case against Dowl.

Turning now to Dowl's interests, the Court finds that she
will not be unduly prejudiced by a temporary stay.  The criminal
action is scheduled for trial in less than a month, meaning that
discovery in the state action will be stayed for only a brief
period.[2]  Given the seventeen-month period of inactivity, it does

---

[2] Trial is scheduled to begin on November 3, 2008.

not appear from the record that Dowl is in a hurry to prosecute
her civil action.  Dowl argues:

> it is extremely prejudicial and fundamentally unfair to
> enjoin [her] from establishing ownership of her family home
> in state court, especially when a successful outcome there
> would be an absolute bar to this [criminal prosecution].
> Indeed, if any case should be stayed, it should be this one.

(R. Doc. 30-1 at 6.)  Dowl does not cite any authority for her

suggestion that a federal criminal prosecution should be deferred

in favor of a state civil action, nor does she explain how the

outcome of the criminal prosecution might turn on the state

action.  In any case, the Court finds that these unsupported

assertions do not support Dowl's claims of prejudice.  As in

*Campbell*, "the record is bare of any showing that a reasonable

delay would . . . prejudice[]" Dowl in her civil suit.  *Campbell*,

307 F.3d at 490.

In addition, the Court finds that the public interest will

be best served by a temporary stay of discovery in the state

court action.  Though federal district courts have historically

"been reluctant to exercise their discretionary power to

interfere with state court proceedings," *United States v.*

*Phillips*, 580 F. Supp. 517, 519 (N.D. Ill. 1984) (citing

*Ahrensfeld v. Stephens*, 528 F.2d 193, 198 (7th Cir. 1975), the

Supreme Court has long recognized that injunctions sought by the

United States implicate "superior federal interests" that

outweigh any federalism concerns. *Leiter Minerals*, 352 U.S. at
225-26. Indeed, federal courts have approved injunctions of
state court proceedings in circumstances far less compelling than
those presented here. In *Leiter Minerals*, for example, the
United States brought an action to quiet title to certain mineral
deposits that were the subject of pending state litigation. *See
id*. at 221-23. The Supreme Court approved an injunction of the
state litigation in order to "prevent the effectuation of state
court proceedings that might conflict with the ultimate federal
court judgment." *Id*. at 228. Similarly, in *NLRB v. Nash-Finch
Co*., 404 U.S. 138 (1971), the Supreme Court approved an
injunction when the state litigation interfered with an aspect of
labor relations covered by the National Labor Relations Act.
*Nash-Finch*, 404 U.S. at 144. If state judicial proceedings may
be enjoined in order to safeguard the property rights of the
United States, to forestall conflicting judgments, or to protect
the federal interest in regulating labor relations, an injunction
designed to protect the integrity of the criminal justice system
does not seem extraordinary.

Finally, the Court notes that the Fifth Circuit has approved
an injunction of state litigation that was significantly more
far-reaching than the one requested here. In *United States v.
Tison*, 780 F.2d 1569 (1986), the Fifth Circuit affirmed an

23

injunction barring the criminal defendants from initiating a state action for slander.  The injunction was set to last until the federal prosecution was completed or three years had elapsed, whichever was earlier.  Here, by contrast, the requested injunction restrains only the taking of discovery, not the prosecution of an entire action.  In addition, the injunction is likely to be lifted in just a few months rather than several years.

For these reasons, the Court finds that the harm that the government is likely to suffer in the absence of an injunction far outweighs the slight prejudice that an injunction may cause Dowl.  "Protection of the integrity of the criminal justice process fully justifies this Court's taking remedial action." *Phillips*, 580 F. Supp. at 520.

## IV.  CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss is DENIED.  Further, defendant's Motion to Review Magistrate's Order is also DENIED.

IT IS ORDERED that Dowl shall cease conducting discovery in *Dowl v. City of New Orleans*, number 2004-10229, Civil District Court for the Parish of Orleans, Division "F," until her criminal trial in this Court has been completed.

24

New Orleans, Louisiana, this <u>7th</u> day of October, 2008.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE