UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES | CIVIL ACTION |
| VERSUS | NO: 08-164 |
| BARBARA DOWL | SECTION: R |

**ORDER AND REASONS**

Before the Court is defendant Barbara Dowl's motion to exclude "other act" evidence. R. Doc. 81. For the following reasons, the Court DENIES the motion.

I.  **BACKGROUND**

In 1991, defendant Barbara Dowl and her former husband, Nathaniel Dowl, purchased a home at 8633 Zimple Street in New Orleans. The property was adjudicated to the City of New Orleans in 1997 after the Dowls failed to pay their property taxes. The City did not take possession of the home at the time, and it is disputed whether, and for how long, the Dowls continued to live there. In 2004, the City sold the property to Robinson Ventures, LLC. The Dowls filed a civil suit in state court several weeks later, seeking to annul the sale of the property. That suit is

-1-

still pending.

The Zimple Street property was damaged by Hurricane Katrina in August of 2005. The indictment charges that Dowl engaged in a scheme to obtain government loans and grants for storm-related damage to the property. On October 31, 2005, Dowl applied to the Small Business Administration ("SBA") for a disaster-related loan. She claimed to own the Zimple Street property and agreed to assign any disaster compensation from "other sources" to the SBA. The loan was approved in March of 2006, and the SBA began to disburse the loan proceeds to Dowl thereafter.

In April of 2006, Barbara and Nathaniel Dowl allegedly executed a false quitclaim deed, in which Nathaniel Dowl and the City of New Orleans purported to sell their interests in the Zimple Street property to Barbara Dowl. Barbara Dowl recorded the deed in the City of New Orleans property records on April 26, 2006. On November 3, 2006, Barbara Dowl applied to the Louisiana Road Home Program for U.S. Department of Housing and Urban Development Block Grant Funds ("Road Home Funds"). In her application, she claimed to be the owner of the Zimple Street property and attached the quitclaim deed as proof of her ownership. She also disclosed that she had applied for the SBA loan. On April 18, 2008, the Road Home Program awarded Dowl $132,000 to repair the Zimple Street property.

On May 9, 2007, Dowl received a check in the amount of

$85,930 from the Road Home. The following week, the Road Home, through its agent, wired the remaining $46,000 of the grant to the SBA. The SBA sent Dowl a letter in June of 2007 informing her that it had received the $46,000, that it was prohibited from providing loan funds that duplicate funding from other sources for the same loss, and that it would therefore deduct the $46,000 from the principal of her loan.

On June 13, 2008, the grand jury issued an indictment charging Dowl with one count of wire fraud, in violation of 18 U.S.C. § 1343 and one count of theft of government funds, in violation of 18 U.S.C. § 641. The grand jury issued a superseding indictment on January 9, 2009 and a second superseding indictment on February 13, 2009. The second superseding indictment, which is the current version, charges Dowl with two counts of theft of government funds, in violation of 18 U.S.C. § 641; one count of wire fraud, in violation of 18 U.S.C. § 1343; and two counts of making false statements, in violation of 18 U.S.C. § 1001. The five counts correspond to the following acts:

  (1)  Count One, Theft of Government Funds, corresponds to Dowl's alleged scheme to obtain the $75,000 SBA loan;

  (2)  Count Two, False Statements, corresponds to statements that Dowl allegedly made to an SBA agent who was inspecting the Zimple Street property;

  (3)  Count Three, False Statements, corresponds to statements that Dowl made on her SBA Loan Authorization Agreement;

(4) Count Four, Wire Fraud, corresponds to the transfer of $46,000 from the Road Home to the SBA; and

(5) Count Five, Theft of Government Funds, corresponds to the transfer of $85,930 from the Road Home directly to Dowl.

Second Superseding Indictment, R. Doc. 63.

On August 5, 2008, Dowl filed a motion to dismiss the wire fraud charge. R. Doc. 14. The Court denied the motion on October 7, 2008. R. Doc. 44. The trial date was then continued several times in order to permit Dowl to retain new counsel and to allow her new counsel time to prepare Dowl's defense with respect to the new charges in the first and second superseding indictments. *See* R. Docs. 51, 58, 67. The trial date is now set for June 1, 2009. R. Doc. 67.

On May 12, 2009, the Government filed a Notice of Intent to Introduce "Other Act" Evidence. *See* R. Doc. 73. In that notice, the Government signaled its intent to introduce six pieces of evidence relating to "other acts" that Dowl allegedly committed:

(1) Dowl's application to obtain a FEMA registration number;

(2) The quitclaim deed for the Zimple Street property;

(3) Three applications for Red Cross assistance that Dowl submitted in September of 2005;

(4) An allegedly false quitclaim deed and Act of Sale for a property located on Livingston St.;

(5) An allegedly false quitclaim deed for a property located at 8631 Zimple St.; and

(6) An allegedly false quitclaim deed for a property

located on Panola St.

*See id.* at 6-10. As discussed in more detail below, the Government argues that the items (1)-(3) are admissible because they are "intrinsic" to the crimes charged in the Second Superseding Indictment. *See United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996). The Government further argues that items (4)-(6) are admissible under F<small>ED</small>. R. E<small>VID</small>. 404(b) to prove that Dowl knew that she was not the owner of the Zimple Street property during the relevant period and to prove that she intended to commit the crimes charged in the Second Superseding Indictment.

Dowl has now filed a Motion in Limine to Exclude the Government's "Other Act" Evidence. R. Doc. 81. Dowl argues that the Government's evidence is inadmissible because it is irrelevant and because its probative value is outweighed by its likely prejudicial effect. The Court has reviewed the contested evidence and the parties' arguments and now rules as follows.

## II. DISCUSSION

As noted above, the Government seeks to introduce evidence of "other acts" that Dowl allegedly committed. The evidence implicates Federal Rule of Evidence 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

>     opportunity, intent, preparation, plan, knowledge, identity,
>     or absence of mistake or accident.

FED. R. EVID. 404(b). As the Fifth Circuit has explained, Rule 404(b) "follows the venerable principle that evidence of extrinsic offenses should not be admitted solely to demonstrate the defendant's bad character. Even though such evidence is relevant, because a man of bad character is more likely to commit a crime than one not, the principle prohibits such evidence because it is inherently prejudicial." *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir. 1978) (en banc).

The Fifth Circuit and other courts have interpreted the phrase "other crimes, wrongs, or acts" to embrace only those acts that are "extrinsic" to the crimes charged in the indictment. *See United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979). Evidence of "intrinsic" acts "does not implicate Rule 404(b), and consideration of its admissibility pursuant to Rule 404(b) is unnecessary." *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996). In general, evidence of other acts is intrinsic "when the evidence of the other act and evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990). Thus, before a court decides whether Rule 404(b) bars the introduction of certain evidence, it must make a threshold inquiry into the relationship between the

evidence and the crimes charged in the indictment.  If the evidence is intrinsic to one or more of the charges, the additional requirements of Rule 404(b) are inapplicable.

If a court determines that the challenged evidence is extrinsic to the charged offenses, it must then apply the two-part test developed in *United States v. Beechum*, 582 F.2d 898, 909-18 (5th Cir. 1978) (en banc), to determine whether the evidence is admissible.  *See United States v. Sumlin*, 489 F.3d 683, 690 (5th Cir. 2007).  First, the Court must determine whether the evidence is "relevant to an issue other than the defendant's character," such as motive, intent, or knowledge.  *Beechum*, 582 F.2d at 911.  If the court determines that the evidence is relevant to such an issue, it must then determine whether the evidence "possess[es] probative value that is not substantially outweighed by its undue prejudice and ... meet[s] the other requirements of rule 403."  *Beechum*, 582 F.2d at 911.

Finally, irrespective of whether the acts in question are considered intrinsic or extrinsic to the charged offenses, evidence of those acts is relevant only if there is proof that the acts actually occurred and that the defendant was in fact the actor who committed them.  *Huddleston v. United States*, 485 U.S. 681, 689 (1988).  As with other issues of relevancy that are conditioned questions of fact, this inquiry requires the court to determine whether "the jury could reasonably find the conditional

fact ... by a preponderance of the evidence." *Id.* at 690; *see also* FED. R. EVID. 104(b); *Beechum*, 582 F.2d at 913 ("[T]he preliminary fact can be decided by the judge against the proponent only where the jury could not reasonably find the preliminary fact to exist."). In other words, the Government must introduce evidence sufficient to permit a reasonable jury to conclude "that the act occurred and that the defendant was the actor." *United States v. Percel*, 553 F.3d 903, 912 (5th Cir. 2008) (quoting *Huddleston*, 485 U.S. at 689).

### A. Intrinsic versus Extrinsic

In this case, the Government seeks to introduce evidence of three groups of acts that it claims are intrinsic to the charged offenses: (1) Dowl's submission of materials to FEMA in order to obtain federal disaster assistance funds, *see* R. Doc. 73-5; (2) Dowl's execution of an allegedly fraudulent quitclaim deed for the Zimple Street property, *see* R. Doc. 73-6; and (3) Dowl's submission of three separate applications to the American Red Cross in order to obtain disaster assistance funds from that organization, *see* R. Docs. 73-7, 73-8, 73-9. The Government also seeks to introduce evidence of three groups of extrinsic acts that it claims are relevant to prove intent, knowledge, plan, and absence of mistake: (4) Dowl's execution of an allegedly fraudulent quitclaim deed and allegedly false Act of Sale for a

property located on Livingston St., *see* R. Doc. 73-10, 73-11; (5) Dowl's execution of an allegedly fraudulent quitclaim deed for a property located at 8631 Zimple St., *see* R. Doc. 73-12; and (6) Dowl's execution of an allegedly fraudulent quitclaim deed for a property located on Panola St., *see* R. Doc. 73-13.

Although the defendant has not challenged the Government's characterization of the various acts as intrinsic versus extrinsic, the Court will briefly discuss that issue.  The Government asserts that the FEMA application and the Zimple Street quitclaim deed are evidence of intrinsic acts because the submission of those documents was a necessary component of Dowl's scheme to defraud the SBA and Road Home.  This conclusion is correct.  The Fifth Circuit has held on numerous occasions that evidence is intrinsic when it relates to acts that are "necessary preliminaries to the crime charged."  *United States v. Brown*, 553 F.3d 768, 789 (5th Cir. 2008); *see also United States v. Torres*, 685 F.2d 921, 924 (5th Cir. 1982) (per curiam) (holding that evidence of two prior "sample" drug transactions was intrinsic because "the sample transactions were necessary preliminaries to the larger sale that led to the defendants' arrests").  The Government has represented that a FEMA representative will testify at trial that the submission of the FEMA application "was a prerequisite to obtaining assistance from the SBA or Road Home."  R. Doc. 73 at 7.  Such testimony will be sufficient to

establish that submitting the application was a "necessary preliminary" to the offenses charged in the indictment. The application is thus intrinsic evidence that does not implicate Rule 404(b). Similarly, the Government has represented that Dowl submitted the Zimple Street quitclaim deed "to the SBA and Road [Home] as proof that she owned the property." *Id.* at 11. The deed is therefore intrinsic evidence because its execution and recording were "necessary preliminar[ies]" to the charged offenses.

The Government also asserts that the three Red Cross applications are intrinsic evidence. According to the Government, the "Red Cross applications, while not a prerequisite to any other source of Hurricane Katrina funds, show the beginning of Barbara Dowl's scheme to obtain disaster funds that she was not entitled to by using the Zimple Street Property as her primary address." *Id.* at 11. This argument does not demonstrate that the evidence is intrinsic. Dowl stands charged with specific crimes relating to her attempts to obtain disaster assistance funds from the SBA and Road Home. As the Government admits, Dowl's attempt to defraud the Red Cross was not a "necessary preliminary" to the charged offenses. Moreover, the Government has not shown that the applications are "inextricably intertwined" with the evidence of the charged crimes.

Finally, contrary to the Government's suggestion that the

Red Cross submissions and charged offenses are part of an overarching "scheme to obtain disaster funds," they do not constitute a "single criminal episode" as the Fifth Circuit has used that phrase. *Compare Aleman*, 592 F.2d at 885 ("If a person breaks into a house, murders the occupants, and steals a television set, the individual offenses do not become 'wholly separate and independent crimes' merely because they are made the subjects of separate indictments."); *Coleman*, 78 F.3d at 156 (holding that evidence is intrinsic when it "complete[s] the story of the crime by proving the immediate context of events in time and place"). Rather, the Red Cross-related acts "occurred at different times and under different circumstances from the crime[s] charged." *Aleman*, 592 F.2d at 885; *see also United States v. Ridlehuber*, 11 F.3d 516, 521-22 (5th Cir. 1993) (holding that evidence relating to drug lab was not intrinsic to firearm charge because the Government did not show that "the drug-related evidence arose out of the weapons charge"); *United States v. Impastato*, 535 F. Supp. 2d 732, 735 (E.D. La. 2008) (holding that "other acts" were extrinsic to charged offenses because they were "based on entirely different evidence and different actors--save, of course, for the Defendant"). Accordingly, the evidence relating to Dowl's alleged Red Cross fraud is extrinsic to the charged offenses and must be evaluated under Rule 404(b).

### B. Extrinsic Acts: Relevance to an Issue other than Character

As both sides acknowledge, the principal issues at trial will be whether Dowl knew that she was not the lawful owner of the Zimple Street property when she did the acts charged in the indictment and whether she otherwise acted with the requisite intent.[1] *See* R. Doc. 73 at 4-5; Letter from George Chaney to Marvin Opotowsky, R. Doc. 73-3 at 1. The quitclaim deeds and Act of Sale for the Livingston St., 8631 Zimple St., and Panola St. properties are plainly relevant to this issue. The Government has represented that it will introduce evidence to show that neither Dowl nor her ex-husband owned the properties at the time the quitclaim deeds were executed. R. Doc. 73 at 8-10. Assuming the Government will introduce sufficient evidence to show that Dowl did in fact execute the quitclaim deeds, *see infra*, the deeds are relevant to her knowledge and intent because they tend to show that she has engaged in similar unlawful schemes to claim

---

[1] Dowl's knowledge is an essential element of each of the charged offenses. *See United States v. Dien Duc Huynh*, 246 F.3d 734, 745 (5th Cir. 2001) (holding that the theft of government funds statute requires the Government to prove that the defendant embezzled or stole the funds "knowing the property was not his"); *United States v. Puente*, 982 F.2d 156, 159 (5th Cir. 1993) ("A conviction [for false statements] requires proof that a defendant had the specific intent to make a false or fraudulent statement deliberately or at least with reckless disregard of the truth and with the purpose to avoid learning the truth.") (internal quotation marks omitted); *United States v. Nguyen*, 504 F.3d 561, 568 ("Mail and wire fraud are specific intent crimes that require the government to prove that a defendant knew the scheme involved false representations.").

ownership to property on several occasions. When a defendant argues that her commission of the charged offenses was premised upon a mistake of fact, evidence that she has committed similar acts on other occasions has "a tendency to make the existence of [the alleged mistake] less probable than it would be without the evidence." FED. R. EVID. 401; *see also United States v. Nguyen*, 504 F.3d 561, 574 (5th Cir. 2007) (holding that evidence relating to two fraudulent property transactions that were not charged in the indictment was relevant to defendant's knowledge and intent in engaging in the similar property transactions charged in the indictment); *United States v. Sanders*, 343 F.3d 511, 518 (5th Cir. 2003) ("[I]n order to find extrinsic evidence relevant to an issue other than character, the proponent must show that the evidence is of an offense that is similar to the charged offense."). Dowl does not dispute this conclusion.

The Red Cross applications are also relevant to Dowl's knowledge and intent. The Government will introduce evidence from the Red Cross to show that victims of Hurricanes Katrina and Rita were entitled to a one-time assistance grant of $1565.00. Dowl allegedly submitted three such applications from different Red Cross centers in Georgia. The applications contain a space where Dowl was asked to enter her "pre-disaster address." *See* R. Doc. 73-7 at 1; R. Doc. 73-8 at 1; R. Doc. 73-9 at 1. In an application submitted on September 4, 2005, Dowl indicated that

her pre-disaster address was the Zimple Street property.  R. Doc. 73-7 at 1.  The Red Cross apparently advanced $1515.00 to Dowl under that application.  In applications submitted on September 17, 2005 and September 21, 2005, however, Dowl indicated that her pre-disaster address was 2339 Peniston St.  R. Doc. 73-8 at 1; R. Doc. 73-9 at 1.  In addition, Dowl certified on the second application that she had not applied for Red Cross assistance at any other location.  R. Doc. 73-8 at 1.  On September 19, 2005, the Red Cross advanced Dowl $665.00 under the second application.  On the September 21, 2005 application, Dowl certified that she had not received any other Red Cross assistance with respect to Hurricane Katrina.  R. Doc. 73-9 at 2. Viewing these features of the Red Cross applications together, the Court finds that the applications are relevant to the issues of Dowl's knowledge and intent because they tend to show that she manipulated her address and submitted false information on prior occasions in order to obtain more disaster assistance funds than she was entitled to.

Dowl's principal argument against the proffered evidence is that it is irrelevant because the Government has not shown that she committed the acts in question.  She argues that all of the evidence suggests that Nathaniel Dowl executed the fraudulent documents.  *See* R. Doc. 81 at 2.  The Court rejects this argument.  Every document except the Livingston St. quitclaim

deed bears Dowl's signature.  Although the Government has not introduced evidence to show that the signatures on the documents match Dowl's actual signature, the evidence in the record is sufficient to permit a reasonable jury to draw that inference. Most importantly, the signatures on the Red Cross applications, which were filled out in the presence of Red Cross representatives and bear Dowl's driver's license number, match the signatures on the other documents.  It is unlikely that three separate Red Cross representatives permitted Nathaniel Dowl to impersonate his ex-wife on the applications.  In addition, the Government represents that it will introduce the testimony of an individual who will relate Dowl's earlier admission under oath that she executed the 8631 Zimple St. quitclaim deed.  In light of these considerations, the Court finds that there is sufficient evidence to permit the jury to "reasonably conclude that the act[s] occurred and that the defendant was the actor." *Huddleston*, 485 U.S. at 689.  Of course, the Government's showing will be strengthened if it introduces further evidence at trial to show that the signatures on the documents in question match Barbara Dowl's actual signature.

The final piece of evidence, the Livingston St. quitclaim deed, purports to transfer the property in question from the City of New Orleans to Nathaniel Dowl.  The deed bears Nathaniel Dowl's signature rather than Barbara Dowl's.  The Government

-15-

argues that a jury could reasonably find that Barbara Dowl assisted in the execution of the deed because (1) the Government will introduce evidence to show that she previously admitted under oath that she assisted Nathaniel Dowl in executing the deed, and (2) the Government will introduce evidence to show that Barbara Dowl filed and recorded the deed at the same time that she filed and recorded the Act of Sale purporting to transfer Nathaniel Dowl's interest in the property to her.  The Court finds that all of this evidence will be sufficient to permit a reasonable jury to find that Dowl assisted in the execution of the deed.

For all of the foregoing reasons, the Court finds that the Government's "other acts" evidence is "relevant to an issue other than the defendant's character."  *Beechum*, 582 F.2d at 911.

### C. Unfair Prejudice

The Court must still determine whether the probative value of the Government's proffered evidence outweighs its likely prejudicial effect.  *See* FED. R. EVID. 403; *Beechum*, 582 F.2d at 911.  Dowl argues that all of the evidence should be excluded because its probative value is slight and because "[t]here is a substantial risk that the jury could improperly assume that defendant shared her ex-husband's culpability and thereby convict on an improper basis."  R. Doc. 81 at 4.  Dowl is referring here

to Nathaniel Dowl's recent conviction of state law charges related to the execution of fraudulent quitclaim deeds. Dowl's concern is not without foundation. The Fifth Circuit has repeatedly held that evidence that a co-conspirator or accomplice has been convicted of a criminal offense should generally be excluded. *See United States v. Taylor*, 210 F.3d 311, 318 (5th Cir. 2000); *United States v. Polasek*, 162 F.3d 878, 884-85 (5th Cir. 1998). Although the Government has not indicated that it plans to introduce evidence relating to the prosecution and conviction of Nathaniel Dowl, it bears emphasizing before trial that such evidence is unlikely to be admissible except for the purpose of impeaching Nathaniel Dowl if he testifies at trial. *See United States v. Modena*, 302 F.3d 626, 631 (6th Cir. 2002); *United States v. Lewis*, No. 98-207, 1999 WL 641882, at *4 (E.D. La. Aug. 23, 1999).

As explained above, the Government's proffered evidence is likely to be highly probative as to Dowl's knowledge and intent. *See also* R. Doc. 83 at 7-8. Dowl has not presented any argument aside from her concerns about Nathaniel Dowl's conviction as to why the introduction of this evidence would be unduly prejudicial. The evidence is not of an inflammatory nature that could lead the jury to decide the case on an improper basis. The Court therefore finds that the probative value of the contested evidence is not substantially outweighed by the danger of unfair

prejudice.

## III. CONCLUSION

For all of the foregoing reasons, Dowl's motion in limine is DENIED.

New Orleans, Louisiana, this 27th day of May, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE